UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| STEVEN EDWARD TOMPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 09-397-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM REYNOLDS, ET AL., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

***** ***** ***** *****

Plaintiff Steven Edward Tompkins filed the instant civil rights Complaint asserting

claims under 42 U.S.C. § 1983 [R. 1].[1]  By separate Order, the Court granted Tompkins's

motions to proceed *in forma pauperis*.  [R. 3 & 5.]  Because Tompkins is proceeding *in forma*

*pauperis*, the Court is required to screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915(A).  Both of these sections require the Court to dismiss the case if it determines the action:

(1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3)

seeks damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-

(iii) & 1915A(b)(1)-(2).  A *pro se* complaint is held to less stringent standards than those drafted

by attorneys.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (quoting *Haines v. Kerner*,

404 U.S. 519, 520 (1972)).  The allegations in a *pro se* complaint must be taken as true and

---

[1] The last known address for Tompkins is that which he listed when he filed this action: the Daviess County Detention Center located in Owensboro, Kentucky. On November 23, 2009, the Clerk of the Court mailed a copy of the docket sheet and the Court's Privacy Rules and Redaction Policy to Tompkins at this address. The mailings were later returned to the Clerk of the Court as "undeliverable."  [R. 10 & 11.]

construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6ᵗʰ Cir. 1983)

(citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6ᵗʰ Cir. 1976)).

     Broadly construing the Complaint, Tompkins alleges that four defendants' involvement in

two successive criminal prosecutions against him violated his constitutional right to due process

of law, and that one defendant's conduct constituted cruel and unusual punishment.  For the

reasons set forth below, all of the claims asserted in the Complaint will be dismissed for failure

to state a claim upon which relief can be granted.

## I.

     The following is a summary of the events alleged by Tompkins in the printed Complaint

Form and in his handwritten supplements:

     On August 12, 2008, Defendants Millard Root and Tommy Cromer of the Kentucky State

Police ("KSP") came to Tompkins's residence; interviewed him about some comments which he

had placed on the website "Topix.com," and encouraged him to admit to posting certain

statements on the website.  According to Tompkins, Cromer searched his out-buildings without a

search warrant.  Two days later, Cromer appeared at his residence with search and arrest warrants

charging him with violating Kentucky Revised Statute § 524.055, "Retaliating Against a

Participant in the Legal Process," a Class D felony ("the First Retaliation Charge").

     Tompkins was lodged in the Rockcastle County Detention Center ("RCDC").  Defendant

Coby Smith of the KSP came to Tompkins's holding cell and verbally harassed him and

threatened him with bodily harm.  Tompkins relayed Smith's actions and threats to RCDC Jailer

James Miller, who refused to investigate the matter when Smith denied the allegations.

     Tompkins was then indicted on the First Retaliation Charge, presumably in Rockcastle

Circuit Court.  He alleges that Defendant William Reynolds, Rockcastle County Attorney, required him to post an excessively high bond of $100,000.00, brought up five and ten year-old domestic violence charges, refused to allow him to be released on bond, and made slanderous statements about him to the local newspaper.  Tompkins states that as of August 24, 2009, he had two months left to serve on the sentence imposed from the First Retaliation Charge, so it appears that Tompkins either pleaded guilty or was convicted of the offense.

On August 17, 2009, before Tompkins could complete service of his sentence, Defendants Reynolds and Rockcastle Commonwealth's Attorney Jeremy Bartlett again charged him with violating Kentucky Revised Statutes § 524.055 ("the Second Retaliation Charge").  The Second Retaliation Charge resulted from a letter Tompkins had written to Reynolds, stating that he planned to file a lawsuit against Reynolds, that he hoped Reynolds would "burn in hell," and that he hoped that Reynolds had a heart attack.

Tompkins admits in his § 1983 Complaint that his letter to Reynolds was rude, but claims that he was merely expressing his constitutionally protected opinion and exercising his right to "insult" Reynolds.  He denies that he threatened Reynolds with any form of physical harm or bodily injury.  Tompkins alleges that with only two months left to serve on his original sentence, Defendants Reynolds and Bartlett "ruined his chances of freedom" and maliciously prosecuted him by bringing the Second Retaliation Charge.  Tompkins seeks $2,000,000.00 in money damages, $2,000,000.00 in punitive damages, and injunctive relief in the form of "punishment" of the defendants.  [R. 1, p. 6.]

3

## II.

### A.

Tompkins has set forth numerous facts but very few claims.  He appears to allege that the four defendants involved in the investigation and prosecution of the First Retaliation Charge (Defendants Root and Cromer, KSP officers, and Defendants Reynolds and Bartlett, prosecutors) violated his constitutional rights.  Construed broadly, Tompkins's claims fall under the due process provisions of the Fourteenth Amendment to the United States Constitution.  To the extent that Tompkins refers to Cromer's alleged warrantless search, that claim would fall under the Fourth Amendment to the United States Constitution.

As noted, Tompkins acknowledges that he was convicted of the First Retaliation Charge, and that, as of August 24, 2009, the date on which he filed this action, he had almost completed his sentence imposed from that conviction.  Tompkins does not allege that he appealed his sentence resulting from the First Retaliation Charge.  Even assuming that Tompkins appealed that conviction, he does not indicate that there has been a favorable termination of it, specifically, that it has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  Thus, based on the facts as alleged by Tompkins, and absent any allegation of an appeal, it is logical to assume that his conviction on the First Retaliation Charge is final.

Although Tompkins asserts claims pursuant to 42 U.S.C. § 1983, he is attempting to use this proceeding to collaterally challenge his conviction stemming from the First Retaliation Charge.  Three well-established legal doctrines prevent this Court from  considering Tompkins's

claims against Defendants Root, Cromer, Reynolds, and Bartlett.

First, the claims are barred by the *Rooker-Feldman* Doctrine, which holds that a federal district court may not hear an appeal of a case already litigated in state court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co*., 263 U.S. 413, 416 (1923). The *Rooker-Feldman* doctrine precludes federal court action "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., 544 U.S. 280, 281 (2005).

Second, to the extent Tompkins seeks monetary relief for alleged violations of his constitutional rights, including the allegation that Defendant Cromer illegally searched his property in violation of the Fourth Amendment, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *Heck* holds that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Id.* Thus, in order to successfully assert constitutional claims against the defendants who were involved in the investigation and prosecution of the First Retaliation Charge (Reynolds, Bartlett, Root and Cromer), Tompkins would be required to demonstrate a favorable termination of that conviction, *i.e.*, show that the conviction was invalid or has been set aside. Absent such a showing, a finding favorable to Tompkins in this § 1983 proceeding would "necessarily imply the invalidity of his conviction" on the First Retaliation Charge. *Heck*, 512 U.S. at 487. *See Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (arrestee was barred under *Heck* from bringing illegal search and wrongful

arrest claims against police officers where success on claims would have necessarily implied invalidity of his convictions, and arrestee has not demonstrated that those convictions had been overturned). As Tompkins has neither alleged nor demonstrated a favorable termination of his conviction on the First Retaliation Charge, his claims against these four defendants must be dismissed.

Third, the claims asserted against Defendants Reynolds (County Attorney) and Bartlett (Commonwealth's Attorney) are defective for other reasons. Any construed official capacity claims against Reynolds and Bartlett are barred by the Eleventh Amendment to the United States Constitution, which precludes a party from asserting claims in federal court against a state or state agency. When a plaintiff sues a state officer in his or her official capacity, the state itself is the actual defendant. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Any construed individual capacity claims against these defendants must also be dismissed. Claims against prosecutors under § 1983 are barred so long as the general nature of the action in question is part of the normal duties of a prosecutor. *Imbler v. Patchman*, 424 U.S. 409, 427 (1976) (holding that a prosecutor accused of knowingly presenting false testimony at trial is protected by absolute immunity); *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997) (holding that the prosecutor was entitled to absolute immunity notwithstanding alleged political motivations for his actions); *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986) (holding that a prosecutor's alleged "use of perjured testimony [,] the non-disclosure of exculpatory information[,] . . . conflict of interest problems [,] and . . . spy allegations" are all "related to the acts of an advocate and thus come within the area of prosecutorial immunity"); and *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (prosecutors were absolutely immune from

claim alleging that they conspired to knowingly bring false charges despite claims of failure to investigate facts and alleged commission of perjury before the grand jury).

In his § 1983 Complaint, Tompkins alleges no facts suggesting that Defendants Reynolds and Bartlett were acting other than in their roles as advocates, *i.e.*, initiating and pursuing a criminal prosecution and presenting the Commonwealth of Kentucky's case either at trial or during plea negotiations.  Therefore, the doctrine of absolute prosecutorial immunity protects them from claims asserted against them in their individual capacities.  Courts have applied prosecutorial immunity because retaliatory suits by defendants "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Eldridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003) (citing *Imbler v. Pachtman*, 424 U.S. at 425-26).[2]

For the reasons set forth above, Tompkins has failed to state a claim against Defendants Root and Cromer, KSP officers, and Defendants Reynolds and Bartlett, prosecutors.  The claims against them will be dismissed with prejudice.

### B.

Tompkins does not allege that Defendant Smith was directly involved in the investigation or prosecution of the First Retaliation Charge.  Instead, Tompkins alleges only that Officer Smith

---

[2]

Tompkins alleges that Defendant Reynolds made slanderous statements about him to a local newspaper.  A prosecutor's statements to the press are only protected by qualified immunity.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 277-78 (1993); *Schrob v. Catterson*, 984 F.2d 1402, 1420 (3d Cir. 1991).  In some instances, the Court may be inclined to issue summons with respect to this type of claim.  Here, however, this action is not warranted inasmuch as the Court has already determined that all of Tompkins's claims are barred by the *Rooker-Feldman* and *Heck v. Humphrey* doctrines.

threatened and verbally harassed him on August 14, 2008, after his arrest, while he was confined

in the RCDC.  Since Tompkins was a pre-trial detainee at that time, his construed claims of cruel

and unusual punishment against Smith fall under the due process provisions of the Fourteenth

Amendment to the United States Constitution.[3]  The claims against Smith must be dismissed for

two reasons.

First, the claim is barred by the applicable statute of limitations.  The time limitation for

bringing a § 1983 action is governed by the limitations period for personal injury cases in the

state in which the cause of action arose.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In

Kentucky, § 1983 actions are limited by the one-year statute of limitations found in Kentucky

Revised Statute § 413.140(1).  *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).

Federal law establishes that the statute of limitations accrues when the plaintiff knew or should

have known of the injury that forms the basis of the claim alleged in the complaint.  *Ruff v.

Runyon*, 258 F.3d 498, 500-01 (6th Cir. 2001).

Tompkins's claims against Smith arose on August 14, 2008, but he did not file this action

until over one year later, on August 24, 2009.  When the face of the complaint reveals that an

action or claim is time barred, the claim may be dismissed summarily upon screening.  *Jones v.

Bock*, 549 U.S. 199, 214-15 (2007).

Second, even if Tompkins's allegations of verbal abuse by Defendant Smith are true,

---

[3]

The Eighth Amendment generally provides the basis to assert a § 1983 claim of cruel and
unusual punishment, but where the claim is asserted on behalf of a pre-trial detainee, the Due
Process Clause of the Fourteenth Amendment is the proper starting point.  *City of Revere v.
Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he due process rights of a [pre-trial detainee]
are at least as great as the Eighth Amendment protections available to a convicted prisoner.").

verbal abuse by itself does not violate the Constitution.  A plaintiff must allege punishments that "involve the unnecessary and wanton infliction of pain" or punishments "disproportionate to the crime committed."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  Verbal abuse, harassment, and arbitrariness in dealing with inmates are not Eighth Amendment violations.  *Id*. at 955; *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not sufficient to state a constitutional deprivation under § 1983); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff's idle threats to hang a prisoner did not give rise to a § 1983 action).  The claims against Smith will be dismissed.

## C.

Finally, Tompkins alleges that the Second Retaliation Charge was brought only four months ago, in August of 2009, presumably in Rockcastle Circuit Court.  It is logical to assume, therefore, that Tompkins has not been convicted of the Second Retaliation Charge and that it is still pending in the state circuit court.  Accordingly, due respect for the jurisdiction of the state court requires this Court to decline to exercise subject matter jurisdiction in favor of the ongoing state proceedings.  *Younger v. Harris*, 401 U.S. 37 (1971); *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001) (*Younger* abstention counsels federal court to refrain from adjudicating matter otherwise properly before it in deference to ongoing state criminal proceedings).

Tompkins's claims and complaints relating to how and why the Second Retaliation Charge was filed against him are issues which he should pursue in the state trial court as a challenge to the criminal charges.  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a

9

federal court should assume that state procedures will afford an adequate remedy."). Where *Younger* abstention is appropriate, it requires dismissal of those claims without prejudice. *Zalman v. Armstrong*, 802 F.2d 199, 207 n. 11 (6th Cir. 1986).  Therefore, these claims will be dismissed without prejudice.

### III.

The Court being sufficiently advised, it is **ORDERED** as follows:

1.     Plaintiff Steven Edward Tompkins's Fourteenth Amendment claims arising from the First Retaliation Charge are **DISMISSED WITH PREJUDICE**.

2.     Plaintiff Steven Edward Tompkins's Fourteenth Amendment claims asserted against Defendant Coby Smith of the Kentucky State Police are **DISMISSED WITH PREJUDICE**.

3.     Plaintiff Steven Edward Tompkins's Fourteenth Amendment claims arising from the Second Retaliation Charge are **DISMISSED WITHOUT PREJUDICE**.

4.     Judgment is entered contemporaneously herewith.

5.     The Court certifies that any appeal would not be taken in good faith.  28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Chanced v. Scarman*, 117 F.3d 949 (6th Cir. 1997).

This the 20th day of January, 2010.



Signed By:

*Gregory F. Van Tatenhove*

United States District Judge